IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CANDACE JOWERS, *individually and
on behalf of others similarly situated,*

    Plaintiff,

vs.                                                                   No. 13-1036

NPC INTERNATIONAL, INC.,

    Defendant.

**ORDER WITHDRAWING REFERRAL (D.E. 196)
& GRANTING PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION (D.E. 193)**

On January 30, 2013, Plaintiff, Candace Jowers, filed a complaint on behalf of herself and others similarly situated against Defendant, NPC International, Inc. ("NPC"), alleging that NPC violated the Fair Labor Standards Act ("FLSA") by failing to compensate her and others similarly situated as required by statute. (Docket Entry ("D.E.") 1.) Before the Court is Jowers's second motion for conditional certification.[1] (D.E. 193.) Defendant filed a response, (D.E. 235-1), to which Jowers filed a reply (D.E. 244). This motion was previously referred to the magistrate judge, (D.E. 196), but that referral is WITHDRAWN.

---

[1] Plaintiff's first motion for conditional certification, (D.E. 107), was dismissed without prejudice after NPC appealed this Court's order denying its motion to compel arbitration to the Sixth Circuit Court of Appeals (D.E. 160).

I. BACKGROUND

The procedural and factual background of this case, one of five related FLSA cases,[2] is substantial and has been thoroughly discussed by the Sixth Circuit Court of Appeals. *See Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 263 (6th Cir. 2015). Briefly, NPC owns and operates 1,260 Pizza Hut restaurants in twenty-eight states. (D.E. 235-1 at PageID 3200.) Jowers was employed by NPC as a delivery driver at its restaurant in Lexington, Tennessee. (D.E. 193-1 at PageID 2107.) Plaintiff alleges that Defendant violated the FLSA by requiring her and other drivers to perform work, undergo training, and attend meetings without being clocked in. (*Id.*)

Jowers submits that decisions regarding compensation practices and other terms of employment were made by centralized management at NPC's headquarters in Overland Park, Kansas. (D.E. 1.) She contends that NPC has "a uniform policy and practice of incentivizing" general managers of its individual restaurants, as well as area managers, "to encourage, permit and/or require" employees to perform off the clock work. (*Id.*) Since it was filed, approximately 125 opt-in plaintiffs have filed consents to join the lawsuit.

In support of the motion, Jowers has provided declarations from eighty-three current and former drivers from various Pizza Hut locations. (*See* D.E. 193-5.) They are representative of restaurants located in fourteen states. (*Id.*) The statements provided echo the allegations set forth by Plaintiff in the complaint. Generally, these declarants allege that they were required to work, attend meetings, and undergo training without clocking in at the direction of management as a means of reducing labor costs to acceptable corporate levels.

---

[2] *See Penley v. NPC Int'l*, No. 13-1031 (W.D. Tenn. filed Jan. 29, 2013) ("current and former shift managers"); *Harris v. NPC Int'l*, No. 13-1033 (W.D. Tenn. filed Jan. 29, 2013) ("current and former cooks"); *Gunn v. NPC Int'l*, No. 13-1035 (W.D. Tenn. filed Jan. 30, 2013) ("current and former tipped employees"); and *Redmond v. NPC Int'l*, No. 13-1037 (W.D. Tenn. filed Jan. 30, 2013) ("current and former customer service representatives").

In the instant motion, Jowers seeks certification of a collective action and requests that NPC produce the names of and send notice to all current and former delivery drivers who were subjected to Defendant's alleged illegal policies at any time during the previous three years.[3] (D.E. 193-1.) NPC strenuously objects to conditional certification. Defendant avers that Plaintiff has not demonstrated that a similarly situated class of drivers exists and maintains that restaurant general managers are responsible for the violations asserted because NPC's company-wide policies comply with the FLSA. (D.E. 235-1 at PageID 3199.)

## II. LEGAL STANDARD

Jowers seeks to pursue this FLSA suit as a collective action. Section 216(b) of the FLSA provides in pertinent part:

> An action [under § 206] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Collective actions under the FLSA require putative class members to opt in to the class. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). Also, in contrast to Federal Rule of Civil Procedure 23 class actions, an FLSA collective action is not subject to the traditional numerosity, commonality, typicality, and representativeness requirements. *Whalen v. United States*, 85 Fed. Cl. 380, 383 (Fed. Cl. 2009).

In *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), the United States Supreme Court "made it clear that the collective action provisions of the FLSA authorize[] a trial court to

---

[3] Plaintiff also requests that this Court equitably toll the statute of limitations for opt-ins who filed consents to join after Defendant's motion to compel arbitration. However, this Court resolved that issue in an order dated June 29, 2016. (D.E. 232.)

issue court-supervised notice to potential class members." *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 250-51 (M.D. Tenn. 1996) (internal citation omitted). Court-supervised notice is appropriate where lead plaintiffs demonstrate that they are "similarly situated" to employees in the class they seek to certify. 29 U.S.C. § 216(b); *O'Brien,* 575 F.3d at 583. Courts typically engage in a two-phase inquiry to determine whether the lead plaintiff has satisfied that showing. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Id.* (internal quotation omitted). The present case is at the first phase of the collective action where the Court must determine whether to "conditionally" certify the proposed class. *See id.*

Although the FLSA does not define the meaning of "similarly situated," the Sixth Circuit's *O'Brien* decision offered clarification of that term. Despite declining "to create comprehensive criteria for informing the similarly-situated analysis," the *O'Brien* court did state "that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." 575 F.3d at 585. "Showing a 'unified policy' of violations is not required, though." *Id.* at 584 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)). Plaintiffs may also be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585. Under the circumstances of *O'Brien*, "[t]he claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." *Id.*

4

The parties disagree as to which standard this Court should apply to evaluate whether members of the putative class are similarly situated to Jowers. Plaintiff contends that the traditional "modest" standard is appropriate, while Defendant urges the Court to apply a more stringent "modest plus" standard.

Under the traditional standard, a plaintiff's burden at this stage is "fairly lenient," and the lead plaintiff must make only a "modest factual showing" that she is similarly situated to members of the prospective class she seeks to certify and send court-supervised notice. *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000), and *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). Because of the lenient standard, district courts typically grant conditional certification of collective actions. *Id.* Thus,

> [s]everal courts have recognized that the named plaintiff's burden at this stage is not a heavy one. *White v. MPW Indus. Servs.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006); *Swallows v. City of Brentwood, Tenn.*, 2007 U.S. Dist. LEXIS 61130, 2007 WL 2402735, at *2 (M.D. Tenn. Aug. 20, 2007). "[T]he burden of proof is relatively slight at this stage of the case because the Court is not making a substantive determination on the basis of all the evidence but simply adopting a procedure which permits notice to be given to other potential class members." *McDonald v. Madison Township Bd. of Township Trustees*, 2007 U.S. Dist. LEXIS 76450, at *6 (S.D. Ohio Oct. 5, 2007). At the notice stage, the plaintiff must show that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).

*Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 WL 6653632, at *4 (W.D. Tenn. Sept. 16, 2008) (footnote omitted).

In contrast to this lenient standard, some courts apply a slightly elevated "modest plus" standard where discovery has been conducted during the pre-certification stage. In conducting an analysis under this standard,

5

> th[e] Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery . . . to determine whether Plaintiffs have made [a] sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exist. In other words, the Court will review whether Plaintiffs have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs.

*Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011).

In this case, however, Defendant acknowledges that Plaintiff sought and received a protective order authorizing her not to respond to discovery. Even so, NPC claims "the more stringent 'modest plus' standard should still apply because much time that [sic] passed between when Plaintiffs filed the lawsuit and ultimately moved for conditional certification and NPC attempted to engage in discovery." (D.E. 235-1 at PageID 3208 n.5.) This argument is inapt given the rationale courts have provided when employing the modest plus standard. *See, e.g.*, *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at *5 (M.D. Tenn. July 10, 2015) (stating that when at least some discovery has taken place, "[i]t seems sensible for a court at least to consider additional information following limited discovery, and courts can evaluate the weight to assign to that information on a case-by-case basis"). In this case, discovery has not taken place; thus, there is no additional information to consider. Moreover, Defendant's argument regarding the age of this matter is dubious given that it has been largely responsible for the case's slow progression. *See Gunn v. NPC Intern., Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015) (agreeing with this Court's earlier conclusion that Defendant had employed dilatory tactics); *see also* (D.E. 232 at PageID 3180) ("The Defendant's actions have delayed this case such that the Court now considers the motion for equitable tolling over three years after the initial filing."). Accordingly, the Court finds that the modest plus standard is not appropriate for this case, and the more lenient standard applies.

III. ANALYSIS

Plaintiff asks this Court to conditionally certify a nationwide collective action based on Defendant's "common plan, policy and practice" of requiring delivery drivers to work, attend meetings, and undergo training without being clocked in. (D.E. 193-1 at PageID 2111.) Defendant maintains that conditional certification is inappropriate for a variety of reasons. Alternatively, NPC asks that, if the Court does conditionally certify a class, it be limited to the Memphis and Nashville Regions, where approximately sixty-two percent of individuals who have already opted in were employed. Finally, assuming conditional certification is granted, Defendant has filed a separate document objecting to Jowers's proposed notice.

    A.  <u>Defendant's Objections to Conditional Certification</u>

    1.  NPC's company-wide policies

First, Defendant insists that its company-wide policies comply with the FLSA. NPC insists that the allegations in the complaint and declarations differ from the company's stated policies and procedures. Additionally, Defendant claims that employees are responsible for ensuring they are paid correctly and that they are required to review their paychecks and inform a manager of any discrepancies. Finally, NPC contends that Plaintiff has not demonstrated a unified policy or practice that violated the FLSA.

Plaintiff theorizes that NPC's centralized management incentivizes local managers to disregard these policies with a goal of reducing labor costs. Therefore, considering Defendant's policies would require a substantive analysis of Jowers's allegations, which is inappropriate at this stage. *See Hamric v. True North Holdings, Inc.*, No. 1:16-cv-01216, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016) (noting that defendant could not defeat certification "merely by

7

pointing to a written policy" that complied with the FLSA); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 759-60 (W.D. Tenn. 2011) (conditionally certifying class where plaintiffs asserted that defendant routinely ignored FLSA-compliant written policy on automatic meal-break deductions); *see also Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 408 (S.D.N.Y. 2012) (rejecting defendant's reliance on its written policy requiring payment for overtime where plaintiffs presented evidence that the policy was violated in practice); *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010) (noting that defendant's arguments that its policies complied with the FLSA "skirt[ed] the merits" of plaintiff's claim, making them inappropriate to consider at conditional certification stage). At this stage, the Court is tasked only with evaluating whether Plaintiff has alleged an FLSA-violating policy and shown that members of the putative class are similarly situated with respect to these violations. *See O'Brien*, 575 F.3d at 585.

Likewise, Defendant's arguments that employees were responsible for reporting violations of company policy to general managers miss the mark. "The law is clear that it is the employer's responsibility, not its employees', to ensure compensation for work 'suffered or permitted.'" *Camesi v. Univ. of Pittsburgh Med. Ctr.*, Civil Action No. 09-85J, 2009 WL 1361265, at *4 (W.D. Pa. May 14, 2009), *recons. denied* (June 10, 2009).

Defendant also maintains that the declarants' "conclusory, isolated and piecemeal allegations" fail to show a unified policy of labor violations. (D.E. 235-1 at PageID 3213.) According to NPC, "despite many months of opportunity to conduct discovery, Plaintiff[] [has] failed to provide any factual evidence of a 'policy of violations' . . . ." (*Id.* at PageID 3214.) This position is puzzling given that Defendant admitted elsewhere in its response that discovery

did not actually take place because Plaintiff obtained a protective order. (*See id.* at PageID 3208 n.5.) Furthermore, the *O'Brien* Court was careful to note that it did "not mean to require that all collective actions under § 216(b) be unified by common theories of defendants' statutory violations . . . ." *O'Brien*, 575 F.3d at 585. In other words, although showing a unified policy that violates the FLSA is one way to prove members of the putative class are similarly situated, it is not the only way. The Sixth Circuit recently reaffirmed *O'Brien*'s conclusion in this respect, stating that "employees who 'suffer from a single, FLSA-violating policy' *or* whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct,' are similarly situated." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1009 (6th Cir. 2016) (emphasis added) (alteration in original) (quoting *O'Brien*, 575 F.3d at 584-85).

    2. Declarations in support of Plaintiff's motion

Next, NPC asserts that Plaintiff has not met her evidentiary burden to justify certification. Defendant characterizes the declarations filed as conclusory and "cookie-cutter." (D.E. 235-1 at PageID 3216.) NPC states that although more than one-hundred opt-in plaintiffs filed consents to join, only eighty-three filed declarations. Defendant has cited no authority that would require Jowers to file a declaration from each opt-in plaintiff at the conditional certification stage. The declarations that were filed make allegations similar to those made by Plaintiff. Defendant says that these statements are generic and without factual support or evidence. The Court disagrees. The declarations relate the experiences of other delivery drivers at various Pizza Hut locations. For example, Cordinne Davidson stated that she was paid an hourly rate as a delivery driver, and her "principal job duty was to delivery pizzas and other food items to customers' homes and

9

workplaces." (D.E. 193-5 at PageID 2134.) She claimed that her general manager directed her to work off the clock to reduce labor costs. (*Id.*) According to Jessica Dennis, management required her "to attend mandatory meetings off the clock without pay . . . ." (*Id.* at PageID 2139.) Alexander Butler averred that he was required to "undergo mandatory job training off the clock . . . ." (*Id.* at PageID 2147.) The remaining declarations mirror these statements.

Defendant contends that these statements are inadequate because the declarants should have indicated how much time they spent working, attending meetings, or completing job training off the clock. However, that level of detail is not necessary at this initial stage. *See Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 639 (W.D. Tenn. 2009) (rejecting similar argument and pointing out that imposing more stringent evidentiary standards at conditional certification stage would "defeat the purpose of the two-stage analysis"); *McNelley v. ALDI, Inc.*, No. 1:09 CV 1868, 2009 WL 7630236, at *4 (N.D. Ohio Nov. 17, 2009) (rejecting similar argument and stating that "potential opt-in plaintiffs are not required to make a lengthy detailed declaration in their own words or without the assistance of counsel"). Additionally, NPC takes issue with the "identical" allegations "from declaration to declaration." (D.E. 235-1 at PageID 3217.) But, this "point cuts both ways: the fact that the [declarants] have had identical experiences as [delivery drivers] . . . strongly supports a finding that the [drivers] are substantially similar to each other." *Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 564 (M.D. Tenn. 2014). According to Defendant, conditional certification is also inappropriate because the declarations filed demonstrate that claims contained therein are "disparate." (D.E. 235-1 at PageID 3218.) NPC made a chart to point out differences in the declarations and asserts that these differences show the proposed class is not similarly situated. However, at the conditional certification stage,

10

identical claims are not required. *See Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1073 (M.D. Tenn. 2015) (certifying class of servers where declarations contained similar factual allegations even though not every declarant included the exact same claims as plaintiffs).

Defendant further argues that some of the individuals who have opted in to this lawsuit "held different positions and worked under different pay arrangements," thus, their claims are "divergent." (D.E. 235-1 at PageID 3219.) For instance, NPC states that some individuals held positions as cooks, servers, shift managers, and customer service representatives. (*Id.* at PageID 3220.) This argument is unconvincing. None of the individuals who have opted in are seeking to redress wage violations in this lawsuit that occurred while they were employed in other positions with NPC. In this case, all of the individuals who filed declarations claim that they suffered FLSA violations while employed as delivery drivers. The fact that they might have worked in other positions is immaterial at this time. *See Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("Generally, courts have left assessment of disparate factual and employment settings of individual class members to the second stage of the analysis."). In sum, these arguments are better suited for the decertification stage.

3. Conflicts of interest among class members

Next, Defendant objects that Plaintiff is not similarly situated to members of the putative class because she has a conflict of interest with some of the proposed class members. This, NPC avers, creates "intra-class tension and [a] conflict of interest" which weighs against conditional certification. (D.E. 235-1 at PageID 3221.) Defendant says that three of the opt-in plaintiffs "*may have* worked as Shift Managers at the same restaurants where other members of the

putative class worked as Drivers at the same time." (*Id.*) (emphasis added). NPC also reasons that "[d]eclarants' reliance on the term 'management' indicates that the lowest level of management on-site at the restaurant—their Shift Manager—contributed to their alleged failure to received proper wages under the FLSA." (*Id.*)

NPC's argument in this respect appears to be based solely on conjecture. Defendant assumes, without pointing to any evidence, that use of the word "management" necessarily includes shift managers. However, although several declarations specifically referred to general managers, none of the declarants attributed the FLSA violations to shift managers. Also, Defendant has provided nothing more than its unsupported belief that several of the opt-ins "may have" worked as shift managers in the same locations as other drivers who have opted in. If NPC finds evidentiary support for this in the course of discovery and believes that decertification is proper on that ground, it is free to raise the issue at the appropriate time. However, these unsupported allegations do not provide a basis for denying conditional certification.

B. Whether Members of the Putative Class are Similarly Situated

Having considered NPC's objections to Jowers's motion, the Court now turns to address the ultimate issue: whether Plaintiff has demonstrated that there is a class of delivery drivers who are similarly situated. In her complaint, Plaintiff theorized that NPC had a policy and practice of incentivizing general managers to implement FLSA-violating policies as a means to lower labor costs. As an exhibit to the instant motion, Jowers included a declaration detailing her claims against Defendant. Plaintiff averred that she worked as a driver at a Pizza Hut restaurant in Lexington, Tennessee. In this capacity, her job duties included delivering pizzas and other food to customers' homes and workplaces. According to Jowers, she performed work off the clock at

12

the direction of her general manager. She further claimed that she attended meetings and mandatory job training sessions off the clock. Jowers stated that she was directed to work off the clock so that management could reduce labor costs to acceptable corporate levels.

In further support of her motion, Jowers included declarations from eighty-three current and former NPC drivers who allege similar violations. These declarants assert that they were required to work, attend meetings, and/or undergo training without clocking in at the direction of management. Each declaration alleges some or all of these violations and attributes them to a corporate goal of reducing labor costs.

Overall, Plaintiff's evidence amounts to a "modest factual showing" that NPC implemented a common policy or practice that violated the FLSA and that she is similarly situated to drivers at other Pizza Hut restaurants. The fact that numerous delivery drivers from restaurants located in multiple locations made similar allegations tends to show that these violations were not the result of "rogue managers" but rather were the result of centralized decision-making. Further, although the declarations are not identical, the claims therein rely upon "common theories of [NPC's] statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585; *see also Murton*, 2008 WL 5725631, at *4 (noting that many courts will deny certification "only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice") (citing cases). Thus, the Court concludes that conditional certification is appropriate.

C. Scope of the Class

Finally, Defendant insists that, if this Court grants conditional certification, the class should be limited to the Tennessee and Memphis regions, where approximately sixty-two percent of the opt-in plaintiffs were employed. In support, NPC cites *Roberts v. Corr. Corp. of Am.*, No. 3:14-CV-2009, 2015 WL 3905088, at *14 (M.D. Tenn. June 25, 2015) and *Tyler v. Taco Bell Corp. & Taco Bell of Am., LLC*, No. 2:15-cv-02084-JPM-cgc, 2016 WL 2344229 (W.D. Tenn. May 3, 2016). Defendant argues that, as was true in *Roberts* and *Tyler*, the record in the present case is "devoid of evidence of practices beyond the location where the named Plaintiff worked." (D.E. 235-1 at PageID 3224.)

In *Roberts*, the district court denied conditional certification where *no* opt-in plaintiffs had worked in facilities outside Tennessee. 2015 WL 3905088, at *11-12. The only evidence in *Roberts* that plaintiff's complaints were part of a nationwide policy was a declaration from an employee in Mississippi, who was not an opt-in plaintiff in the Tennessee case but was instead a participant in a similar case in Mississippi. *Id.* at *12. Likewise, in *Tyler*, the plaintiff "presented *no evidence* that any other [assistant general manager] at a corporate-owned Taco Bell restaurant" was similarly situated within the meaning of the FLSA. 2016 WL 2344229, at *5 (emphasis added). In contrast, Jowers has presented declarations from eighty-three drivers in fourteen states, all alleging violations of the FLSA similar to those made by Plaintiff. (D.E. 140-5.) Also, by NPC's own admission, thirty-eight percent of the opt-in plaintiffs *do not* come from the Memphis or Nashville regions. Accordingly, NPC's argument that conditional certification should be limited to those two regions is unconvincing.

14

Whether nationwide certification is appropriate is a closer call, and NPC's organizational structure complicates the Court's analysis in this respect. According to NPC, it operates 1,260 restaurants in twenty-eight states, which are divided into three territories: East, West, and South. Each of these territories is then divided into regions.[4] Due to this divisional structure, some individual states have areas that fall into different territories and regions. For example, the East Territory includes the Nashville region, which encompasses locations in Huntsville, Alabama. However, one of the South Territory's regions is Birmingham, Alabama.[5] Therefore, although declarations have been submitted by employees from fourteen states, they are actually representative of more than one territory and numerous regions.[6]

Consequently, Plaintiff has met her modest burden in demonstrating that the practices she alleges violate the FLSA are not limited to one particular territory or region but are widespread and systemic. In other words, she has shown that there are likely other similarly-situated delivery drivers at NPC-operated Pizza Hut restaurants across the country. Accordingly, the Court concludes that Plaintiff has made a sufficient showing that nationwide certification would serve the interests of justice and economy. *See Bradford*, 137 F. Supp. 3d at 1078-79 (certifying nationwide class and noting that the FLSA's "broad remedial purpose" did not require a showing

---

[4] There are five regions in the East (Memphis, Nashville, St. Louis, Virginia, and Winston-Salem), six regions in the West (Ozark, Rocky Mountain, Northwest, Midwest, Dakotas, and Iowa), and six regions in the South (Little Rock, Georgia, Tallahassee, Mobile, South Florida, and Birmingham). (D.E. 235-1 at PageID 3200-01.)

[5] For further example, East Arkansas is part of the Memphis region within the East Territory. However, there is a "Little Rock" region in the South Territory.

[6] Without more detailed information regarding regions and store locations, the Court cannot determine the exact number of territories and regions represented at this time. However, by comparing NPC's description of its organizational structure to the addresses provided by Declarants, it appears that employees from at least two territories and multiple regions allege similar FLSA violations.

that employees from every restaurant in each state where defendant operated had opted in to the lawsuit at conditional certification stage); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325, at *6 (D. Colo. Apr. 21, 2012) (rejecting defendant's request to limit class geographically where only six of forty-two regions were represented at time of conditional certification because "[t]he fact that [employees] from every region have not yet opted into [the] action does not mean that a nationwide class cannot exist").

D. NPC's Objections to Plaintiff's Proposed Notice

Defendant also objects to Plaintiff's proposed notice. NPC asks that the Court direct the parties to confer and file an agreed-upon notice with the Court. Alternatively, Defendant lodges specific objections to Jowers's proposed notice and requests that the Court amend the notice accordingly. The Court agrees that the parties should meet to discuss and draft a mutually acceptable notice. However, in an effort to facilitate that process, the Court will address some of Defendant's objections to the proposed notice.

Defendant avers that the proposed one-hundred-twenty day-period for returning opt-in forms is too long, and argues in favor of a forty-five day-period instead. Other district courts in this Circuit facing similar objections have shortened the requested period. *See Knispel v. Chrysler Group LLC*, No. 11-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012) (shortening period from ninety to forty-five days at defendant's request); *Miller v. Jackson, Tenn. Hosp. Co., LLC*, No. 3:10-1078, 2011 WL 2197694, at *3 (M.D. Tenn. June 6, 2011) ("splitting the difference" and setting a period of seventy-five days, where plaintiff proposed ninety and defendant sixty). These decisions appear to have been fairly arbitrary and made with little or no analysis, with the *Knispel* court noting only that the forty-five day period suggested

16

by the defendant was sufficient "especially considering the statute of limitations concerns raised by [p]laintiff's counsel," despite plaintiff's position favoring the longer period. *Knispel*, 2012 WL 553722, at *8. Considering the age of the present case, the Court concludes that the opt-in period should be sixty days. That should allow ample time for interested individuals to join the lawsuit while also moving the case forward. The sixty-day opt-in period shall begin to run upon receipt of the opt-in plaintiffs' contact information, as provided below.

NPC further objects to some of the proposed means of providing notice, as well as Plaintiff's request for employees' personal information, as unnecessary and unduly burdensome. Mailing of notice to putative class members at Plaintiff's expense should, in its view, be sufficient. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *D'Antuono v. C&G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045, at *6 (D. Conn. Nov. 23, 2011); *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011). Thus, Plaintiff's request for this type of notice appears reasonable and is granted. However, the Court finds the additional requirement of attaching notice to employees' paychecks to be duplicative and, therefore, an unnecessary expense to impose on the Defendant. *See Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (finding no reason to impose upon defendant costs associated with providing what would be largely duplicative notice to potential opt-in plaintiffs in the form of paycheck attachments).

As to the production of employee telephone numbers, the Court notes that "[t]his type of discovery request is routinely granted in collective actions." *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09-14596, 2012 WL 424878, at *8 (E.D. Mich. Feb. 9, 2012); *see also Miller v. Jackson,*

*Tenn. Hosp. Co., LLC*, No. 3:10-1078, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011) (finding nothing "alarming" about plaintiff's request for employee telephone numbers). However, the production of social security numbers, last known email addresses, and dates of employment are not warranted at this juncture. *See Motley v. W.M. Barr & Co.,* No. 12-cv-2447 JDB/tmp, 2013 WL 1966444, at *9 (W.D. Tenn. Mar. 7, 2013), *report and recommendation adopted in part, rejected in part*, No. 1:12-cv-02447-JDB-egb, 2013 WL 1966442 (W.D. Tenn. May 10, 2013).

Therefore, notification to putative class members will be by mail at Plaintiff's expense, and Defendant will post notice in conspicuous places at its restaurants. The employer will not be required to attach notice to employees' paychecks. To facilitate notification by mail, Defendant will also provide a list of names, last known addresses, and last known telephone numbers for all present and former delivery drivers of NPC within the last three years. The deadlines for providing names and posting notice will be determined after the parties submit the agreed-upon notice.

Finally, the Defendant takes issue with Jowers's request that consent forms be deemed filed on the date they are postmarked. NPC has cited a case from a district court in the Fifth Circuit in support of this objection, *see Diaz v. Applied Mach. Corp.*, Civil Action Nos. H-14-1282 & H-15-2674, 2016 WL 3568087, at *12 (S.D. Tex. June 24, 2016), but courts in other FLSA collective cases in this Circuit have permitted such filing. *See Parr v. Hico Concrete, Inc.*, No. 3:10-1091, 2011 WL 5512239, at *2 (M.D. Tenn. Nov. 10, 2011); *Snide*, 2011 WL 5434016, at *8. Consequently, the Court finds the Defendant's objection unpersuasive.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for conditional certification is GRANTED.  The parties are hereby DIRECTED to confer and file a mutually acceptable notice in accordance with this Court's order within fourteen days of entry of this Court's order.

IT IS SO ORDERED this 13th day of December 2016.

s/ J. DANIEL BREEN<br>
CHIEF UNITED STATES DISTRICT JUDGE